UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| WOMEN'S HEALTH LINK, INC., | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:14-CV-107 RLM-RBC |
| | ) | |
| FORT WAYNE PUBLIC | ) | |
| TRANSPORTATION CORP., | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER

Women's Health Link, Inc., which provides counseling with a "life-affirming perspective" for pregnant women, wants a preliminary injunction requiring Fort Wayne Public Transportation Corp. to allow Women's Health Link's public service advertisement on city buses the Transportation Corporation operate. The Transportation Corporation, which is better known as "Citilink," says that it rejected the Women's Health Link ad because of its viewpoint-neutral policy not to accept public service announcements that express or advocate positions on political, religious, or moral issues. Women's Health Link says Citilink already has allowed such ads on its buses. Based on the limited record of a sort often seen at the preliminary injunction, the court denies the preliminary injunction motion because Women's Health Link hasn't shown a reasonable probability of success on its contention that Citilink hasn't applied its rules consistently and neutrality. Along the way, the court also denies Citilink's motion to dismiss Women's Health Link's case.

I

A preliminary injunction ususally preserves the status quo until the case can be heard, but in a proper case, a preliminary injunction can require a defendant to do what the plaintiff wants the defendant to do. A court considering a motion for a preliminary injunction looks at (among a few other factors) the likelihood that the plaintiff will have proven its case when the case runs its full course, whether the plaintiff is threatened with injury for which an award of damages would be inadequate, and the risk of harms to each side arising from a mistaken ruling on the injunction request: how badly the plaintiff would be harmed in the time between a mistaken denial of a preliminary injunction and the end of the case, as opposed to how badly the defendant would be harmed in the time between a mistaken grant of a preliminary injunction and the end of the case. The plaintiff's likelihood of success on the merits of its claim frames the analysis: a plaintiff who shows a strong likelihood of succeeding on the merits of the claim can get a preliminary injunction with a lesser showing with respect to the balance of harms, while a plaintiff with a weak likelihood of success on the merits needs a greater showing with respect to the balance of harms. Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc., 735 F.3d 735, 740 (7th Cir. 2013); Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002). In the final analysis, the plaintiff - Women's Health Link in our case - bears the burden of persuading the court that a preliminary injunction is appropriate. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting C. WRIGHT,

A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2947, at 129-130 (2d ed. 1995)).

The facts set out in the next several paragraphs might turn out to be wrong. Motions for preliminary injunction arise when a case is young, and decisions ordinarily are made on a slice of the information that ultimately will come to light by the end of the case. But a decision of this sort requires a court to apply the law to a given set of facts, and at this early stage of the case, a court can only identify what the facts appear to be at this point.

The board of directors for the Fort Wayne Public Transportation Corporation adopted its policy about advertising on buses in March 2011. The resolution that adopted the policy explained that the board intended Citilink buses and facilities to be non-pulic forums subject to viewpoint-neutral guidelines. The Board expressed its intent to "avoid any endorsement, implied or otherwise, of any of the products, services, or messages advertised" with the hope of maximizing advertising revenue while maximizing ridership.

For purposes of today's issues, only parts of the policy need be explained.

1. The policy set forth fourteen categories of advertising Citilink won't accept, the last of which was "Non-commercial": "The subject matter and intent of the advertisement is non-commercial and does not promote for sale, lease, or other form of financial benefit a product, service, event, or other property interest in primarily a commercial manner for primarily a commercial purpose."

2. Citilink might accept public service announcements by governmental entities, schools, or nonprofit organizations. Citilink can reject such PSAs for a variety of identified reasons, such as if the PSA contained false/misleading/deceptive speech, doesn't clearly identify the advertiser, or if the PSA expresses or advocates opinions or positions on "political, religious, or moral issues."

3. Proposed ads or PSAs have to be submitted to Citilink for review. Citilink is to notify the applicant promptly whether the ad is acceptable or might fall within one of the policy's prohibitions. Citilink can, but doesn't have to, recommend changes to a noncompliant submission.

4. If the submission is declined, the advertiser can appeal to Citilink board of directors' advertising committee within 30 days. The committee must then meet and report back to the advertiser within 5 days.

Becky Rogness submitted a proposed ad to Citilink in November 2013. Ms. Rogness was a member of the Women's Health Link board of directors and also the communications manager for the Allen County Right to Life organization. Ms. Rogness's signature block in her email to Citilink disclosed both those categories and included a website: www.ichooselife.org. The email was sent from this address: 'becky.rogness@ichooselife.org." The proposed ad consisted of a head shot of a young woman, with the words, "You are not alone. Free resource for women seeking health care." On a banner along the bottom of the ad were the Women's Health Link logo, website, and phone number.

Citilink assistant manager Betsy Kachmar told Ms. Rogness that the ad looked fine and that Ms. Rogness should fill out the contract and send it in. Ms. Rogness did so immediately. When Ms. Kachmar received the contract, she noted that the street address and phone number in the contract were the same as the Allen County Right to Life address and the phone number in Ms. Rogness's earlier signature block. Ms. Kachmar says that all of this left her uncertain about the advertiser's true identity and the relationship between Women's Health Link and Allen County Right to Life. So she went to the website listed in the proposed ad and learned that Women's Health Link provided "life-affirming" (which Ms. Kachmar construed as "against abortion") referral resources without charge.

Ms. Kachmar notified Ms. Rogness that the Women's Health Link ad was unacceptable, and followed with an email explaining that Citilink's advertising policy said that Citilink wouldn't accept "noncommercial" ads.

Less than two weeks later, Julie Perkins emailed the same "You are not alone" ad to Ms. Kachmar and asked that Citilink post it as a public service announcement. The email's signature identified Ms. Perkins as Women's Health Link's executive director. The street address listed on the contract Ms. Perkins submitted was the same address listed on the first contract Ms. Rogness submitted — in other words, the same as Allen County Right to Life.

Ms. Kachmar decided that because the ad led to a website that identified Women's Health Link as an organization that provides "life-affirming" referral resources, the PSA didn't educate or raise public awareness about a significant

5

social issue in a viewpoint-neutral manner. She notified Ms. Perkins that Citilink was declining the PSA for that reason. At oral argument, Citilink said the PSA also violated its policy's bar against misleading advertising because Allen County Right to Life was the true advertiser and because Women's Health Link provides no health services. The court needn't digress for that argument; that's not why Citibank rejected the PSA.

Thirty days passed with no appeal to the Citilink board of directors. Women's Health Link filed this suit on April 7, 2014.

Additional facts are set forth as they become pertinent.


II

Women's Health Link alleges that Citilink's refusal to display its PSA violated Women's Health Link's First Amendment rights to freedom of speech and association and its Fourteenth Amendment rights to due process and equal protection of the laws. It asks the court to enjoin Citilink (preliminarily now, permanently later) from enforcing its advertising policies and give it immediate access to advertising space in Citilink buses.


A

Citilink says the court must dismiss the case because the complaint doesn't state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Citilink says Women's Health Link's failure to appeal Ms. Kachmar's decision leaves

Women's Health Link without a final decision to attack, making Women's Health Link's claim of injury speculative at best and weakening any causal connection between Citilink's actions and harm to Women's Health Link. Citilink also contends that Women's Health Link's argument that the advertising policy is overbroad posits nothing more than a chilling effect on the speech of Women's Health Link and other non-profits, which Citilink says isn't enough to give Woment's Health Link standing to sue.

To establish standing to sue, Women's Health Link must show: (a) an injury in fact — an actual or imminent, concrete and particularized invasion of a legally protected interest; (b) a causal relationship, meaning that Women's Health Link claims an injury that can be traced back to Citilink's action; and (c) a likelihood that the relief Women's Health Link seeks in this suit will redress its injury. <u>Lee v. City of Chicago</u>, 330 F.3d 456, 468 (7th Cir. 2003) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992); see also <u>Meese v. Keene</u>, 481 U.S. 465, 472 (1987) (to have "standing to challenge governmental action as a violation of the First Amendment . . . the litigant [must] demonstrate 'a claim of specific present objective harm or a threat of specific future harm.'"). Women's Health Link has made that showing.

Citilink says that without having appealed Ms. Kachmar's rejection of its PSA, Women's Health Link is left without a final decision. Citilink would require more of an applicant than its advertising policy does. Citilink's policy gives an advertiser an option to request an appeal within 30 days of learning that its ad

was rejected. It doesn't require an applicant to appeal. The decision made on Citilink's behalf becomes final thirty-one days later. More than thirty-one days had passed before Women's Health Link filed suit. The rejection is final.

Citilink objects because Ms. Kachmar was an assistant general manager who (as she concedes in her affidavit) had no final decision-making authority over advertising applications. Again, the policy itself undercuts Citilink's argument. The advertising policy requires Citibank to review each proposed advertisement to determine compliance; the policy doesn't say which Citibank employee is to undertake the review, or how high on the organizational chart the reviewer must be. Women's Health Link sent its application to Citilink (twice) and Ms. Kachmar rejected it (twice). Women's Health Link had no duty to inquire further into Ms. Kachmar's implied authority to do what she purported to do on Citilink's behalf.

The court denies Citilink's motion to dismiss the complaint. The case continues, and the court turns to analysis of the preliminary injunction motion.

B

The court begins with the First Amendment claims. The First Amendment inqury begins by identifying the forum in which the intended speech would take place — the interior advertising space in Citilink's buses. Cornelius v. NAACP Legal Defense and Educ. Fund, 473 U.S. 788, 801 (1985) ("The relevant forum is defined by focusing on 'the access sought by the speaker'"); Air Line Pilots Ass'n Int'l v. Dept. of Aviation of the City of Chicago, 45 F.3d 1144, 1151 (7th Cir. 1995).

The forum's nature dictates the standard of review by which restrictions on speech are to be measured, and the parties see things differently on this point.

Neither party contends that the interior advertising space is a traditional public forum, meaning one that has been, whether by tradition or law, devoted to assembly and debate. Arkansas Educ. Tele. Comm'n v. Forbes, 523 U.S. 666, 677 (1998) (quoting Perry Education Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37, 45 (1983)). Women's Health Link believes the bus interiors constitute either a designated public forum or a limited designated public forum, meaning one reserved for specific groups or the discussion of specific topics. Good News Club v. Milford Central School, 533 U.S. 98, 106 (2001). Women's Health Link says that limitations on speech in those fora is subject to strict scrutiny by the courts. Christian Legal Soc'y v. Walker, 453 F.3d 853, 866 n.2 (7th Cir. 2006); Planned Parenthood Ass'n v. Chicago Transit Auth., 767 F.2d 1225, 1232 (7th Cir. 1985). Citilink sees the bus advertising space as a nonpublic forum, Lehman v. City of Shaker Heights, 418 U.S. 298 (1974). Courts must uphold speech restrictions with respect to a nonpublic forum if the restrictions are reasonable and viewpoint neutral. Christian Legal Soc'y v. Martinez, 561 U.S. 661, ___, 130 S. Ct. 2971, 2984 (2010); Good News Club v. Milford Central Sch., 533 at 106-107; Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. 819, 829 (1995); Perry Education Ass'n v. Perry Local Educators, 460 U.S. at 46. Women's Health Link says that even if Citilink is right about the nature of the forum, Citilink's application of the restrictions in its policy hasn't been viewpoint neutral.

Both sides agree that to decide whether the forum is a designated public forum, a limited designated forum, or a nonpublic forum, the court must ascertain Citilink's intent. In the resolution that adopted the advertising policy, Citilink's board of directors announced an intention that its vehicles and facilities be nonpublic fora, but that is only part of the answer. Citilink's actual policy and consistent practice with respect to bus advertising and the compatibility of bus interiors with expressive activity also figure in the analysis. <u>Air Line Pilots Ass'n v. Chicago Dept. of Aviation</u>, 45 F.3d at 1152 (citing <u>Cornelius v. NAACP Legal Defense Fund</u>, 473 U.S. at 802-803).

The preliminary injunction record doesn't provide much to go on with respect to the consistency of Citibank's enforcement of its advertising policy with respect to noncommercial ads and PSAs (consistency with respect to other prohibited categories don't appear to be helpful in this case). Citilink reports that it has rejected a political campaign ad and an advertisement by the (pro-life) Adoption Support Center, but the record isn't clear as to the grounds on which those advertisements were declined. The record doesn't disclose how many ads or PSAs Citilink accepted, or what the ads or PSAs were for, or whether Citilink used any different procedures to decide whether ads or PSAs ran afoul of the advertising policy. This record reveals only three advertisements that Citilink rejected; two of the three were for pro-life organization. Still, Citilink doesn't appear to have provided advertising space to all comers, which makes <u>Planned Parenthood Ass'n v. Chicago Transit Auth.</u>, 767 F.2d at 1232, upon which

Women's Health Link places considerable reliance, a very different case from the one before the court.

Just as the record doesn't tell much about the ads that didn't make it, it doesn't tell us much about the ads that have been placed in the Citilink buses. Women's Health Link points to five displays that it says show Citilink's viewpoint discrimination:

1. An announcement for the Healthy Indiana Plan, a health care plan sponsored by the State of Indiana. It reads, "Uninsured? We've Got You Covered, Indiana!" The ad includes the "HIP" logo and phone number and images of two couples standing beneath umbrellas.

2. State of Indiana announcements telling Supplemental Nutrition Assistance Program beneficiaries that "SNAP (Food Stamps) Benefit Deposit Dates Are Changing in January" and urging the beneficiaries to "Please plan ahead!"

3. Announcements for a fund-raising walk sponsored by the Foundation for Fighting Blindness. The displays list event details, contact information and a website, along with a graphic and slogan.

4. A PSA sponsored by Parkview Health urging the bus riders not to text and drive.

5. A United Way announcement for its "Dial 2-1-1" program. According to the ad, the program offers "Free Information about food, counseling, housing and more."

How these show viewpoint discrimination isn't clear to the court. The first four address public health issues, but only in the broadest sense of the phrase. People might live longer or be better off if nobody texts while driving, or if blindness could be reversed or prevented or cured, or if the under- and unemployed can feed themselves and their children, or if otherwise uninsured people can get health insurance with state assistance. The court can't see how any of those PSAs express or advocate opinions or positions on any issue political, religious or moral.

The advertised United Way services are more complex. Since Ms. Kachmar had studied Women's Health Link's website when deciding whether its ad was acceptable, Women's Health Link went to the website listed in the United Way 2-1-1 display. It found that United Way lists a variety of services a caller might ask about, and lists a variety of providers with respect to each service. Family planning is one of those services. Women's Health Link then went to the websites of the providers to whom United Way might refer a caller asking about family planning. Upon examining those websites, Women's Health Link found that at least some of those providers included abortion or abortion counseling among the available options. As Women's Health Link sees it, if Citilink accepts PSAs from an organization that will refer a caller to a provider that terminates pregnancies (or send the caller to a provider that does abortion counseling), but refuses a PSA from an organization that doesn't do so amounts to viewpoint discrimination.

Assuming Citilink knew that United Way will refer callers to an abortion clinic (and Women's Health Link hasn't provided any evidence that Citilink knew), this would weigh strongly in Women's Health Link's favor. But Women's Health Link's submissions told the court only part of the story. It seems United Way also refers callers to Catholic Charities of Fort Wayne-South Bend (which doesn't appear to provide or recommend abortions) and A Hope Center Pregnancy & Relationship Resources (which expressly says it doesn't refer for abortions) nad Women's Care Center (which says it provides alternative to abortion and birth control).

In short, United Way provides referrals to entities that provide or recommend abortion, and referrals to entities that don't. United Way can't, on this record, be said to express or advocate opinions or positions on political, religious, or moral issues.

Women's Health Link has offered no evidence that would support a finding that the Citilink advertising space is a designated public forum. Citilink's statement of intent in the resolution adopting the advertising policy points in the direction of a nonpublic forum. The record doesn't contain much evidence about actual policy and consistent practice with respect to bus advertising, but what little there is all points in the direction of a nonpublic forum. Nothing in the record suggests that bus interiors are incompatible with expressive activity. *See* <u>Ridley v. Massachusetts Bay Transp. Authority</u>, 390 F.3d 65, 77 (1st Cir. 2004) (MBTA runs advertisements, so "nothing inherent in the property which precludes its use

for *some* expressive activity"); <u>Air Line Pilots Ass'n v. Chicago Dept. of Aviation</u>, 45 F.3d at 1156 (if diorama display cases contained "political" or other public interest messages in the past, "City cannot now claim that those messages are incompatible with the purpose of the forum"); <u>Planned Parenthood Assn. v. Chicago Transit Authority</u>, 767 F.2d at 1232 ("since CTA already permits its facilities to be used for public-issue and political advertising, it cannot aruge that such use is incompatible with the primray use of the facilities"). Because no evidence supports Women's Health Link's contention that Citilink bus advertising space is a designated public forum, the Citilink policy needn't undergo a strict scrutiny analysis. To prevail on its First Amendment claim, Women's Health Link must show that the adveritising policy's restrictions are either unreasonable or not viewpoint neutral.

A ban on PSAs that express or advocate opinions or positions on political, religious or moral issues doesn't seem essential to the operation of a municipal bus system; the Citilink service seems unlikely to collapse if the buses carry advertisements for family health referrals for those who don't want to terminate their pregnancies. But when dealing with a a limited designated forum or a nonpublic forum such as the Citilink advertising space, it's not enough for a challenger to show that the restrictions aren't uncompromisingly necessary or justified by compelling reasons. The challenger must show that the restrictions are unreasonable in the sense of being unsupported by reason. <u>Christian Legal Soc'y. v. Martinez</u>, 130 S.Ct. at 2984; <u>Good News Club v. Milford Central School</u>, 533

U.S. at 106-107; <u>Rosenberger v. Rector and Visitors of Univ. of Virginia</u>, 515 U.S. at 829; <u>Perry Ed. Assn. v. Perry Local Educators' Assn.</u>, 460 U.S. at 46.

The resolution by which Citilink adopted the advertising policy explains that Citilink views its riders as a captive audience, and Citilink explained at argument that it wants to avoid offending its riders by subjecting them to offensive or controversial material. The policy Citilink adopted addresses only a subset of potentially offensive or controversial material by prohibiting PSAs that express or advocate positions or opinions of political, religious or moral issues. But neither the purpose of the restriction nor the method of trying to achieve that purpose can be said to rest on something other than reason.

Women's Health Link's associational rights claim founders on the same grounds. Without question, Ms. Rogness's roles in both Women's Health Link and Allen County Right to Life, and the organization's common street addresses led Ms. Kachmar to look at the website reported in the proposed ad. But there is no evidence that common offices or officers led to Citilink refusing the proposed material, whether tendered as an ad or as a PSA. The only evidence is that Ms. Kachmar rejected the ad because it was noncommercial, and rejected the PSA because she read the "life-affirming" reference on the website as advocating a position or opinion on abortion, which is a political, religious and moral issue.

Women's Health Link hasn't identified any evidence that would support what it needs to prove to prevail on its First Amendment claims at trial or summary judgment.

C

Women's Health Link also contends that the advertising policy violates its Fourteenth Amendment right to due process because the policy is vague and overbroad.[1] A claim of this sort ordinarily doesn't require factual development, but in any event, this record doesn't support a finding that Women's Health Link has any probability of success on this claim.

A law is unconstitutionally vague if its terms are such that people of common intelligence must guess at its meaning and will differ about its application. Gresham v. Peterson, 225 F.3d 899, 907 (7th Cir. 2000) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 629 (1984)). Several of the terms in Citilink's advertising policy might be thought to fall within that definition — profanity, prurient sexual suggestiveness, libelous speech, copyright infringement, to name a few — but none of those terms came into play in Citilink's rejection of Women's Health Link's offering. Women's Health Link only has standing to challege the policy provisions that were applied to it. See Lujan v. Defenders of Wildlife, 504 U.S. at 560 (standing doctrine requires plaintiff to show its injury was "fairly . . . trace[able] to the challenged action of the defendant"); Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 350 (6th Cir. 2007) (plaintiff's standing with respect to one element of an ordinance "does not magically carry over to allow

---

[1] Women's Health Link's complaint also alleges that the policy violates its Fourteenth Amendment right to equal protection of the laws, but its preliminary injunction arguments don't discuss that claim. The court assumes Women's Health Link doesn't seek the preliminary injunction on equal protection grounds.)

it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions"); Covenant Media of SC, LLC v. City of North Charleston, 493 F.3d 421, 429-430 (4th Cir. 2007) ("a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions"); Coleman v. Ann Arbor Transportation Authority, 947 F.Supp.2d 777, 790 (E.D. Mich. 2013) (same).

Citibank says it rejected the Women's Health Link PSA based on the policy provision prohibing PSAs that express or advocate opinions or positions on "political, religious, or moral issues." None of those terms is unconstitutionally vague. A general restriction on "political" speech is permissible in a nonpublic or limited designated public forum. International Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992); Lehman v. Shaker Heights, 418 U.S. 298. Attempts to prohibit "immoral" opinions or positions ordinarily are unconstitutionally vague, Air Line Pilots v. Chicago Dept. of Aviation, 45 F.3d at 1153 n.5, but the Citilink policy doesn't do that: it rejects the expression of opinions or positions on moral issues, a far less opaque phrase. Finally, Women's Health Link offers no persuasive reason why "religious issues" should be thought too fuzzy to be fair under the due process clause.

That leaves Women's Health Link's overbreadth claim. A government can't enforce a law that is impermissibly overbroad under the First Amendment, meaning that when judged in relation to the law's plainly legitimate sweep, a

substantial number of its applications are unconstitutional. <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 449 n.6 (2008); see also <u>Bell v. Keating</u>, 697 F.3d 445, 455-456 (7th Cir. 2012) ("Facial invalidation for technical overbreadth . . . is inappropriately employed unless the statute 'substantially' criminalizes or suppresses otherwise protected speech ivs-a-vis its 'plainly legitimate sweep'"). For a constitutional overbreadth challenge, parties not before the court must face a realistic danger that the law will significantly compromise their recognized First Amendment protections. <u>Members of City Council of City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 801 (1984).

Citilink has explained that the policy's restrictions are intended to raise revenue by selling advertising, while maintaining concern for the sensibilities of the captive audience on its buses. A governmental entity can legitimately establish comprehensive controls over harmful conduct, as long as the constitution doesn't protect that conduct. <u>New York v. Ferber</u>, 458 U.S. 747, 770 (1982) (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 613 (1973)). Although the terms mentioned two paragraphs ago might trigger closer analysis, Women's Health Link hasn't shown that a "substantial number" of the policy's restrictions offend the constitution.

Discovery might produce a very different evidentiary tableau by the time of trial or summary judgment, but based on the material in the preliminary injunction record, Women's Health Link hasn't shown any likelihood of success on its First Amendment or Fourteenth Amendment claims.

D

A court must consider the balance of harms, trying to estimate the risk of error: the degree to which Women's Health Link will be harmed if the court denies the injunction and Women's Health Link eventually wins the case, and the degree to which Citilink will be harmed if the court grants the injunction in error. See <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States</u>, 549 F.3d 1079, 1086 7th Cir. 2008) ("the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. . . . In so doing, the court employs a sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'") (quoting <u>Roland Machinery Co. v. Dresser Indus., Inc.</u>, 749 F.2d 380, 387 (7th Cir. 1984). The balance of harms heavily favors Women's Health Link and the preliminary injunction it seeks. If it is eventually determined that the First Amendment covers the speech involved in this case (Women's Health Link wouldn't be harmed if no constitutional rights are being violated), denial of a preliminary injunction would have cost Women's Health Link the exercise of its First Amendment rights until the case is finally resolved. Even a brief loss of First Amendment freedoms amounts to irreparable injury. <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976). In contrast, if the court issues the injunction and Citilink eventually wins the case, Citilink will simply have been required to carry a fairly

innocuous PSA for an organization whose pro-life stance would be discovered only for those who access the website or place a phone call.

Similarly, a court considering a preliminary injunction motion must consider the public interest, and the public interest almost always favors protecting First Amendment freedoms. <u>Korte v. Sebelius</u>, 735 F.3d 654, 666 (7th Cir. 2013); <u>American Civil Liberties Union of Illinois v. Alvarez</u>, 679 F.3d 583, 589-590 (7th Cir. 2012).

So Women's Health Link has demonstrated the risk of irreparable injury, that the balance of harms favors issuance of a preliminary injunction, and that such an injunction would be in the public interest. What Women's Health Link hasn't done, though, is show any chance that it will succeed on the merits of its claims. The law doesn't require much of a chance of success — something barely more than negligible will do if the balance of harms tilts heavily toward the plaintiff, <u>Group Brands LLC v. Cracker Barrel Old Country Store, Inc.</u>, 735 F.3d 735, 740 (7th Cir. 2013) — but a plaintiff must show at least some chance of success, and Women's Health Link hasn't been able to do that so far. If there is no demonstrated chance of success on the merits, there can be no preliminary injunction. <u>FutureSource LLC v. Reuters Ltd.</u>, 312 F.3d 281, 287 (7th Cir. 2002) ("a preliminary injunction should not be entered if the plaintiff has no claim"); <u>Kiel v. City of Kenosha</u>, 236 F.3d 814, 817 (7th Cir. 2000) ("Given that Kiel's chances of succeeding on the merits of his claim are so minimal as to be almost non-existent, we agree with the trial judge and affirm the denial of Kiel's motion for a

preliminary injunction."); <u>Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking, Inc.</u>, 176 F.3d 1004, 1011-102 (7th Cir. 1999). The motion for a preliminary injunction must be denied.

## III

This is a surprising holding, even to the court. Undisputed facts indicate that had Women's Health Link not included the "life-affirming" phrase on its website, or even with that phrase, had Women's Health Link not shared an address and phone number with Allen County Right to Life, its ad would have ridden the Citilink buses throughout 2014. In the First Amendment sense, such a scenario evokes the quacks-like-a-duck doctrine. But while the discovery process might smoke out a duck, this preliminary injunction record contains no evidence at all that the Women's Health Link PSA was rejected for any reason other than the Citilink advertising policy.

For all of these reasons, the court DENIES the defendant's motion to dismiss [Doc. No. 25], and DENIES plaintiff's motion for a preliminary injunction [Doc. No.15].

SO ORDERED.

ENTERED: <u>  September 11, 2014  </u>

<u>    /s/ Robert L. Miller, Jr.        </u>
Judge, United States District Court