UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| WOMEN'S HEALTH LINK, INC., | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:14-CV-107 RLM |
| | ) | |
| FORT WAYNE PUBLIC | ) | |
| TRANSPORTATION CORP., | ) | |
| | ) | |
| *Defendant* | ) | |

OPINION AND ORDER

Women's Health Link, Inc., wants to advertise its counseling services on buses operated by the Fort Wayne Public Transportation Corporation. The bus operation is commonly called "Citilink." Citilink refused to allow the advertisements, relying on its advertising policy. Women's Health Link contends that the advertising policy is unconstitutional, at least as Citilink applied the policy to its request. Both sides moved for summary judgment, and the court heard oral argument on May 11, 2015. For the following reasons, the court grants the defendant's motion for summary judgment [Doc. No. 51] and denies the plaintiff's motion [Doc. No. 54].

Summary judgment is appropriate when the record before the court shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever there is enough evidence for a jury to return a verdict for nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A

summary judgment accepts the non-movant's evidence as true and draws all reasonable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). That both sides have moved for summary judgment doesn't change the standard. Market Street Assoc. Ltd. Partnership v. Frey, 941 F.2d 588, 590 (7th Cir. 1991) ("The filing of cross motions for summary judgment must be distinguished from the case in which the parties stipulate that the judge may enter final judgment on the record compiled in the summary judgment proceedings."). Nothing in this record suggests the existence of a genuine issue of material fact.

In November 2013, Becky Rogness, a member of the Women's Health Link Board of Directors and Communications Manager for Allen County Right to Life, contacted Citilink's Assistant Manager, Betsy Kachmar, about placing an advertisement for Women's Health Link in Citilink buses. The proposed advertisement contained a head shot of a young woman, and stated: "You are not alone. Free resource for women seeking health care." The Women's Health Link logo, website (womenshealthlink.org), and phone number appeared on a large banner at the bottom of the advertisement.

Ms. Kachmar emailed Ms. Rogness on November 6, 2013, telling her that the "ad looks fine . . . You can just scan & email the contract . . . & I'll sign & send back." Ms. Rogness completed the Transit Advertising Contract on behalf of Women's Health Link, and sent it to Ms. Kachmar the next day.

A week later, Ms. Kachmar notified Ms. Rogness that: "the proposed Women's Health Link advertisement does not meet the commercial requirement (1(n)) in our advertising policy (see attached) . . . I am therefore not able to enter into a contract to post this proposed advertisement in our buses." Paragraph 1(n) of Citilink's policy provides, "1. **Restrictions:** Citilink **WILL NOT** display or maintain any advertising that falls within one or more of the following categories: … (n) <u>Non-commercial</u>. The subject matter and intent of the advertisement is non-commercial and does not promote for sale, lease or other form of financial benefit a product, service, event, or other property interest in primarily a commercial manner for primarily a commercial purpose."

In response, Women's Health Link Executive Director Julie Perkins completed and signed a new Transit Advertising Contract on November 25, 2013, in which she clarified that Women's Health Link was "requesting space to display our proposed public service announcement pursuant to section 2 of Citilink's Policy Governing All Advertising in an upon Citilink Vehicles and Facilities." Ms. Perkins emailed the new contract and the proposed advertisement to Ms. Kachmar the next day. Section 2 of the Citilink policy provides, "**Public Service Announcements.** Citilink may make advertising space available for pubic service announcements by governmental entities, academic institutions, or nonprofit organizations. Such announcements are subject to the provisions set forth in Section 1(a) through 1(l) above and shall not express or advocate opinions or positions upon political, religious, or moral issues."

In a December 2, 2013 email, Ms. Kachmar told Ms. Perkins that. "We feel that this ad does not educate the general public or raise awareness regarding a significant social issue in a viewpoint neutral manner. We do not choose to post this ad as a PSA."

Paragraph 4 of the Citilink policy provides a right of appeal from the rejection of a proposed advertisement: "Advertisers may appeal the rejection of advertising to the Advertising Committee of the Citilink Board of Directors by notifying the General Manager, in writing, within 30 days of the rejection. The Committee Chair will schedule a meeting and notify the advertiser of the decision within five days of the meeting date." Women's Health Link didn't exercise that right to appeal; instead, it filed this suit against Citilink under 42 U.S.C. § 1983, alleging that Citilink violated its constitutional rights by refusing to display an advertisement/public service announcement for its free referral service for women seeking "life-affirming health care related services." The complaint explained that Women's Health Link provides women with referrals for gynecological care, prenatal care, primary medical care, housing, emotional needs, mammograms, financial issues, birth control information, sexual assault help, sexual education, adverse prenatal diagnoses, veterans services, adoption, tests for sexually transmitted diseases, spiritual care, and mental health care.

Women's Health Link alleges that Citilink violated its First Amendment rights to freedom of speech and freedom of association (Counts 1 and 2) and its

Fourteenth Amendment rights to due process and equal protection (Counts 3 and 4) when it:

> (1) adopted policies and engaged in practices that restricted protected speech and weren't narrowly tailored to serve a compelling state interest;

> (2) allowed other non-profit organizations and government entities (*i.e.*, the State of Indiana, Parkview Health, the Foundation for Fighting Blindness, and United Way) to place health care related public service announcements in Citilink buses, but denied Women's Health Link equal access to that space because of its "life-affirming" viewpoint and association with Allen County Right to Life; and

> (3) failed to provide any substantive or procedural guidelines for its officials to follow in deciding whether to permit or deny a public service announcement, and granted itself "unbridled discretion" to accept or reject a public service announcement if it is "considered objectionable by Citilink" and "reserve[d] the right to suspend, modify, or revoke the application of any or all of [its advertising] policy as it deems necessary to...to fulfill the goals and objectives of Citilink."

After the court denied Citilink's motion to dismiss and Women's Health Link's motion for preliminary injunction, Women's Health Link, Inc. v. Fort Wayne Public Transp. Corp., 45 F.Supp.3d 857 (N.D. Ind. 2014), the parties filed cross-motions for summary judgment.

Analysis begins with the First Amendment, which in turn begins with identification and characterization of the relevant forum — in our case, the interior advertising space on Citilink buses. *See* Cornelius v. NAACP Legal Defense and Educ. Fund, 473 U.S. 788, 801 (1985); Air Line Pilots Ass'n Int'l v. Dept. of Aviation of the City of Chicago, 45 F.3d 1144, 1151 (7th Cir. 1995). Neither party contends that the advertising space is a traditional public forum. They disagree about whether it is a designated public forum or a nonpublic forum, and on what standard should govern restrictions on access.

Women's Health Link contends that when Citilink allowed its advertising space to be used for public service announcements, it created a designated, or limited designated, public forum — one reserved "for certain groups or for the discussion of certain topics," Good News Club v. Milford Central School, 533 U.S. 98, 107 (2001) — and opened the door to discussion of issues related to those services, including the issue of abortion. Women's Health Link maintains that any restrictions on access to the interior advertising space are therefore subject to strict scrutiny. Citing Christian Legal Society v. Walker, 453 F.3d 853, 866, n.2 (7th Cir. 2006); Planned Parenthood Ass'n v. Chicago Transit Auth., 767 F.2d 1225, 1230-1231 (7th Cir. 1985); United Food & Commercial Workers Union v. SW Reg'l Transit Auth., 163 F.3d 341, 355 (6th Cir. 1998); Christ's Bride Ministries, Inc. v. SE Pa. Transp. Auth., 148 F.3d 242, 252 (3rd Cir. 1998).

Resolution RO2-11, which created the Citilink advertising policy, expressly provides that:

[T]he Board of Directors...intends that Citilink vehicles and facilities constitute *non public forums* that are subject to the *viewpoint-neutral* guidelines set forth in the [Policy] below, and that the Board of Directors has determined to permit certain forms of public service and commercial advertising in or upon Citilink vehicles and facilities. . . .

[I]n establishing its standards for advertising in/on Citilink vehicles and facilities, [Citilink and/or its Board of Directors] seeks to maximize revenue generated by advertising . . . [to] fulfill[] its mission to "provide safe, courteous and dependable public transportation at the most reasonable cost to our community"; and . . . to avoid any endorsement, implied or otherwise, of any of the products, services, or messages advertised.

(Emphasis added).

Citilink expressed its intent only with respect to one of the factors the court must consider, but its policies and practices with respect to the advertising it has allowed and rejected demonstrate its desire to maintain the advertising space as a non-public forum. *See* Cornelius v. NAACP Legal Defense Fund, 473 U.S. at 802-803; Air Line Pilots Ass'n v. Chicago Dept. of Aviation, 45 F.3d at 1152. Citilink has rejected only three advertisements since adopting its advertising policy in 2011: an advertisement for a political campaign and advertisements submitted by Adoption Support Center and Women's Health Link. Women's Health Link doesn't dispute Citilink's reasons for rejecting the political campaign advertisement, but contends that it applied its advertising policy inconsistently and engaged in viewpoint discrimination when it rejected the Adoption Support Center and Women's Health Link advertisements because they hold and promote life-affirming views, but allowed several groups with "non-life-affirming" purposes

7

and messages to display comparable advertisements free of charge addressing the same or similar topics. Women's Health Link concludes that Citilink's advertising policy runs afoul of the constitution under either the strict scrutiny standard applied to public forums or the reasonableness standard applied to non-public forums.

The record indicates that the Adoption Support Center advertisements were rejected initially and on appeal on the advice of Citilink's attorney because they didn't promote a commercial purpose and were considered a form of public interest speech and a matter of public controversy. Such material is expressly prohibited under Section 1(n) of the Advertising Policy and Resolution RO2-11, which states that Citilink intended to maintain its vehicles and facilities as non-public forums when it implemented the advertising policy. Citilink's stated reasons for rejecting Adoption Support Center's advertisements were consistent with its reasons for rejecting Women's Health Link's advertisement. While Women's Health Link says Citilink's actions were actually a pretext for viewpoint discrimination, it hasn't pointed to any facts from which a reasonable trier of fact could infer a discriminatory motive.

The evidence doesn't support Women's Health Link's contention that Citilink allowed comparable advertisements that address the same or similar topics but advocate a non-life-affirming position. Women's Health Link cites as examples advertisements that promote:

- efforts to "combat widespread societal ills": an advertisement for the American Red Cross Multicultural Information eXchange (MIX) Program that offers free translation and interpretation services; United Way's "Dial 2-1-1" advertisement for "free information about food, counseling, housing and more"; an advertisement by the Fort Wayne Literacy Alliance that states: "Need a GED? Call 426-7323"; an advertisement for Narcotics Anonymous's "info line"; Neighborhood Health Clinics' advertisement offering "preventative health care to individuals without insurance"; and Indiana Youth Institute's advertisement for "Trip to College" – a "free online resource . . . for advice on planning, preparing and paying for college."

- services designed to help the poor and other "vulnerable" members of the community: the American Red Cross MIX Program advertisement; United Way's "Dial 2-1-1" advertisement; the Literacy Alliance advertisement; the Narcotics Anonymous advertisement; Neighborhood Health Clinics' advertisement; the "Trip to College" advertisement; and an advertisement by Western Governors University (a private, nonprofit, online university in Indiana) offering "accredited degrees in Business, Information Technology, Teacher Education, and Health Professions including Nursing."

- health-care-related messages and children's services: an advertisement for Kool Smiles, a "kids dental office in Fort Wayne"; Managed Health Services's advertisement (an insurance company offering family health plans through Hoosier Healthwise and the Healthy Indiana Plan); a "Fight the Flu, Before It Hits You!" advertisement by Dupont, Lutheran Hospital, and RediMed offering tips on how to avoid the flu; an advertisement for Small Smiles Dental Centers; an advertisement offering "Free Backpacks" filled with supplies ("blankets, hats, gloves, toiletries, and more") to the homeless; an advertisement by the Indiana Division of Family Resources announcing that the benefit deposit dates for SNAP (food stamps) was changing; United Way's "Dial 2-1-1" advertisement; an advertisement for the Healthy Indiana Plan sponsored by the State of Indiana; an Indiana University Health advertisement for Goshen Center for Cancer Care; an advertisement sponsored by the State of Indiana encouraging people to ger the H1N1 flu vaccination; and advertisement for a 2010 charity walk ("Vision Walk") for the benefit of the Foundation Fighting Blindness; a "quit smoking" advertisement sponsored by the State of Indiana; the Narcotics Anonymous Info Line advertisement; the Neighborhood Health Clinics advertisement; Parkview Trauma Centers' "Don't Text & Drive" advertisements; Parkview Trauma Centers' "Pass with Care" advertisement promoting

10

bicycle awareness; and an advertisement for MDwise, a Hoosier Healthwise Health Plan.

- free referral services; and

- free counseling opportunities.

The advertisements to which Women's Health Link refers address public health issues in one sense — people might live longer or be better off if nobody texts while driving, if blindness could be reversed or prevented or cured, if the under- and unemployed can feed themselves and their children, or if otherwise uninsured people can get health insurance with state assistance. But there's no evidence to suggest that the advertisers, or the advertisements they posted, express or advocate an opinion or position on a political, religious, or moral issue, much less a "non-life-affirming" position.

The United Way "2-1-1" advertisement appears at first glance to be virtually identical to Women's Health Link's advertisement. But unlike Women's Health Link, United Way doesn't express, advocate, or endorse a political or religious opinion or position in its advertisement or on the website featured in the advertisement. While United Way makes referrals to organizations that do so — *e.g.*, Catholic Charities of Fort Wayne-South Bend, Hope Center Pregnancy & Relationship Resources, and Women's Care Center — Citilink's restrictions on non-commercial, political, religious, and moral speech apply to the advertiser, not to the service providers listed on their websites. United Way and Women's Health Link are the advertisers.

Women's Health Link points to email correspondence between Ms. Kachmar and Sredrick Tinker, a representative of Backpacks for Hope, to show inconsistencies in the application of the policy. In July 2014, Mr. Tinker inquired of Betsy Kachmar whether Citilink would allow him to ride its buses for a day, telling other passengers about what Backpacks for Hope does, and handing out flyers–"just to get the word out". The email contained a link to www.backpacksofhope.org and ended with a quotation from Philippians 4:13: "I can do all things through Jesus Christ who [Strengthens] me".

Ms. Kachmar responded:

. . . I did go to your website & do support the backpacks of hope concept. We have a no soliciting policy so I can't allow you to pass out fliers on the bus or at the station. You are welcome to ride the buses & talk to your fellow passengers & drivers about whatever is on your mind–if that happens to be what you are doing with backpacks, & they seem interested in helping, you can provide them with more information. There is a fine line between "soliciting" and friendly conversation. Keep it on the conversation side and you should be fine.
Until recently, I would have gladly posted an interior bus ad for you for free; however, we are in the middle of a lawsuit for denying to post a group's ad because it was about a controversial/political subject. I know yours is not, but I think I have to be extra careful about what we post right now. I've attached our rate sheet. If you would like to submit an ad I will be glad to review it and see if we can put it up?

Nothing in the summary judgment record suggests that Backpacks for Hope ever submitted an advertisement for Citilink's consideration, much less one that expressed or advocated an opinion or position on a "political, religious, or moral issue", or that Citilink ever posted any other advertisement that expressed or advocated such a position.

Citilink didn't open the door to public discussion by restricting the content of public service announcements that could be posted on its buses: it closed it. Citilink maintained the nonpublic nature of its advertising space. *See, e.g.,* Lehman v. City of Shaker Heights, 418 U.S. 298, 303-304 (1974) (plurality opinion); American Freedom Defense Initiative v. Suburban Mobility Auth. for Regional Transp. (SMART), 698 F.3d 885, 890-896 (6th Cir. 2012) (holding that transit agency that excluded political advertisements but allowed public service announcements created non-public forum); Lebron v. Nat'l R.R. Passenger Corp. (Amtrak), 89 F.3d 39, 40 (2d Cir. 1995) (Amtrak's allowance of public service announcements on billboard space did not convert it to a designated public forum); American Freedom Defense Initiative v. Metro. Transp. Auth., ___ F.Supp.3d __, 2015 WL 3797651 at *5 (S.D.N.Y. June 19, 2015) ("[D]isallowing political speech, and allowing commercial speech only, indicates that making money is the main goal[,]" not opening the forum for public discourse.).

Planned Parenthood Ass'n v. Chicago Transit Auth., 767 F.2d 1225 (7th Cir. 1985), on which Women's Health Link relies, doesn't dictate otherwise. In Planned Parenthood, the court of appeals concluded that advertising space on a bus system was a public forum because the transit authority had "no policy at all" with respect to the acceptance of advertising and accepted advertising on "a wide variety of commercial, public-service, public-issue, and political ads." 767 F.2d at 1232-1233. In contrast, Citilink has a detailed advertising policy limiting advertising in its buses to commercial advertisements and public service

13

announcements that comply with the restrictions set out in section 1 of that policy and don't "express or advocate opinions or positions upon political, religious, or moral issues", and so far as this record shows, Citilink has consistently enforced that policy. Citilink's policy doesn't give the public unrestricted access to its advertising space, or create an open forum for public discourse. By limiting the space to commercial advertising and public service announcements that don't address political, religious or moral issues, Citilink created and consistently maintained the advertising space in its buses as a nonpublic forum. Restrictions on speech such as these need only be reasonable in light of the purpose served by the forum, and viewpoint neutral to satisfy the constitution. Christian Legal Soc. Chapter of the Univ. of California, Hastings College of the Law v. Martinez, 561 U.S. 661, 679 (2010); Good News Club v. Milford Central School, 533 U.S. at 106-107; Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. 819, 829 (1995); Perry Ed. Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46 (1983); Lehman v. City of Shaker Heights, 418 U.S. at 303-304; Christian Legal Society v. Walker, 453 F.3d at 866, n.2.

The Supreme Court's recent decisions in Walker v. Texas Div., Sons of Confederate Veterans, Inc., __ U.S. __, 135 S.Ct. 2239 (2015), and Reed v. Town of Gilbert, Ariz., __ U.S. __, 135 S.Ct. 2218 (2015), do not indicate otherwise. In Walker, the Court held that the specialty license plate designs in Texas were government speech, not private speech, and so weren't subject to First Amendment strictures (distinguishing *Lehman*). 135 S.Ct. at 2250-2253. In Reed

v. Town of Gilbert, Ariz., __ U.S. __, 135 S.Ct. 2218 (2015), the Court found that a town ordinance that restricted the content of signs placed on public property or in a public forum was content based on its face, and therefore subject to strict scrutiny. This case involves neither government speech nor a public forum.

Women's Health Link contends that Citilink's advertising policy is neither reasonable nor viewpoint neutral. It says the policy gives unbridled discretion to Citilink officials, and that Citilink's stated reasons for rejecting the advertisement aren't credible, improperly focus on the website, and were merely a pretext for viewpoint discrimination. The court disagrees.

Whether the advertising policy gave Citilink officials "unbridled discretion" is a component of the requirement that its decisions be viewpoint neutral. Southworth v. Bd. of Regents of Univ. of Wis. Sys., 307 F.3d 566, 579 (7th Cir. 2002). The "unbridled discretion" doctrine requires that a prior restraint on speech contain narrow, objective, and definite standards to guide the decisionmaker, Forsyth County v. Nationalist Movement, 505 U.S. 123, 132-133 (1992); Southworth v. Bd. of Regents of Univ. of Wis. Sys., 307 F.3d at 578, but the First Amendment doesn't require perfect clarity and precision in those standards, especially in the context of a nonpublic forum.

Some provisions and terms in Citilink's advertising policy could use clarification, but not those applied to Women's Health Link's advertisement. The policy unequivocally prohibits advertising that: (1) implies or declares an endorsement by Citilink of any service or point of view; (2) is non-commercial;

and/or (3) expresses or advocates opinions or positions on political, religious, or moral issues. Those terms aren't ambiguous, are generally well-understood, and have been consistently and uniformly applied by Citilink. The summary judgment record doesn't disclose any instance since the policy's inception in which Citilink accepted an advertisement that contained material advocating a political or religious issue generally, or a position on the issue of abortion, specifically. Citilink's discretion to accept or reject an advertisement was limited not only by the objective criteria listed in paragraphs 1 and 2 of the policy, but by the appellate rights conferred upon prospective advertisers in paragraph 4. Had Women's Health Link presented its case to the Advertising Commission, the outcome might have been different, but it didn't do so. Based on the record before the court, no reasonable trier could find that the advertising policy as drafted and applied granted Citilink officials unbridled discretion or was anything other than reasonable and viewpoint neutral.

The reasonableness of the restrictions depends on the purpose of the forum. In this case, the stated purpose was maximizing revenue, keeping the cost of riding the bus down, protecting Citilink's passengers from the risk of imposing on a captive audience, and avoiding any "endorsement, implied or otherwise" of the product, service or message. The restrictions on political, religious, and moral speech serve that purpose and are reasonable under the circumstances. *See* Lehman v. City of Shaker Heights, 418 U.S. at 304 (holding under similar circumstances that "the managerial decision to limit car card space to innocuous

and less controversial commercial and service oriented advertising does not rise to the dignity of a First Amendment violation."); Cornelius v. NAACP Legal Defense and Educ. Fund, 473 U.S. at 809 ("avoiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum"); Children of the Rosary v. City of Phoenix, 154 F.3d at 978-979 (interest in maintaining neutrality on political and religious issues supported ban on non-commercial speech); New York Magazine v. Metro. Transp. Auth., 136 F.3d 123, 130 (2d Cir. 1998) ("Disallowing political speech, and allowing commercial speech only, indicates that making money is the main goal," not opening the forum to discourse); American Freedom Defense Initiative v. Metro. Transp. Auth., 2015 WL 3797651 at *5 (S.D.N.Y. June 19, 2015) (same).

The distinction between a permissible subject matter restriction and impermissible viewpoint discrimination is "not a precise one." Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. at 829, 831. The restrictions in the Citilink policy are content-based, see Reede v. Town of Gilbert, --- U.S. ---, 135 S. Ct. 2218, 2227 (2015), but the advertising space in this case is a nonpublic forum, so reasonable content-based restrictions are permissible, as long as they don't target "particular views taken by speakers on a subject." Id. at 829-830. See also Choose Life Illinois, Inc. v. White, 547 F.3d 853, 865 (7th Cir. 2008).

For the reasons already discussed, the court rejects Women's Health Link arguments that Citilink's policy as applied isn't viewpoint neutral. No evidence in this summary judgment record suggests that Citilink allowed any group with non-

life-affirming purposes and messages to display advertisements or public service announcements in its buses.

It's evident on the face of the advertising policy that Citilink intended to exclude all speech on political, religious, or moral issues, and the record presents no indication that it implemented or enforced that policy in a "viewpoint discriminatory manner" – one that "reflects an intent to use the policy to exclude disfavored perspectives on the issues," *i.e.*, "prohibited the expression of religious perspectives on abortion while possibly permitting others to express their perspective." <u>Children of the Rosary v. City of Phoenix</u>, 154 F.3d at 980.

Nor is there evidence to suggest that the restriction on noncommerical and/or political, religious, and moral speech was a "facade" for viewpoint discrimination. "A facade for viewpoint discrimination . . . requires discrimination behind the facade," <u>Grossbaum v. Indianapolis Marion County Bldg. Auth.</u>, 100 F.3d 1287, 1298 (7th Cir. 1996), and this record provides no indication that Citilink favored one viewpoint over another when it rejected Women's Health Link's advertisement. The undisputed evidence shows that Ms. Kachmar rejected Women's Health Link's first submission because its advertisement was noncommercial, and rejected its second (the public service ad) because she read the "life affirming" reference on the website as advocating a position or opinion on abortion–a political, religious and moral issue that the advertising policy expressly precluded.

Neither the facts nor the law support Women's Health Link's assertion that Citilink improperly focused on its website in making its decision. The website is part and parcel of the advertisement, which features it prominently. Given the advertising policy's stated purposes, it was reasonable for Citilink to look beyond the face of the advertisement to determine whether it complied with its advertising policy.

Women's Health Link infers that Citilink's stated reasons for rejecting its advertisement must have been a pretext for discrimination because Citilink allowed other groups with what it refers to as non-life-affirming purposes and messages to display comparable advertisements addressing the same topics. But as already discussed, the advertisements to which it referred aren't comparable and didn't address the topic of abortion. The records contains no indication that Citilink treated other advertisers differently or has accepted any advertisement that "expressed or advocated opinions or positions upon political, religious, or moral issues." While Women's Health Link's desire to provide assistance for women in need may be commendable, Women's Health Link hasn't presented any evidence that Citilink engaged in impermissible viewpoint discrimination when it rejected its advertisement, and Women's Health Link can't force Citilink to convey its ideological message.

Women's Health Link's assertion that Citilink targeted its advertisement for heightened scrutiny and exclusion from the forum based on its expressive association with Allen County Right to Life, is also unsubstantiated. Ms. Rogness's

roles in both Women's Health Link and Allen County Right to Life and the organizations' common street addresses led Ms. Kachmar to look at the website referenced in Women's Health Link's advertisement. But there's no evidence that common officers or offices was why Citilink refused to post Women's Health Link's advertisement.

Women's Health Link hasn't shown that Citilink's advertising policy was anything other than reasonable and viewpoint neutral. Citilink is entitled to judgment as a matter of law on Women's Health Link's First Amendment claims.

Women's Health Link's due process and equal protection arguments mirror its First Amendment arguments. Women's Health Link maintains that the policy is unconstitutionally vague because it uses subjective and undefined terms and denies use of the forum to Women's Health Link because it expresses less favored or universally-accepted views. Citing <u>Police Dept. of Chicago v. Mosely</u>, 408 U.S. 92, 97 (1972).

The First Amendment provides the "explicit textual source of constitutional protection" in this case, <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998), and is the yardstick by which to measure the constitutionality of Citilink's advertising policy. A law is unconstitutionally vague if its terms are such that people of common intelligence must guess at its meaning and will differ about its application. <u>Gresham v. Peterson</u>, 225 F.3d 899, 907 (7th Cir. 2000) (quoting <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 629 (1984)). Several of the terms in Citilink's advertising policy might (or might not) fall within that definition —

20

profanity, prurient sexual suggestiveness, and libelous speech, to name a few —
but none of those terms came into play in Citilink's rejection of Women's Health
Link's offering. Women's Health Link only has standing to challenge the policy
provisions that were applied to it. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555,
560 (1992) (standing doctrine requires plaintiff to show its injury was "fairly . .
. trace[able] to the challenged action of the defendant"); Prime Media, Inc. v. City
of Brentwood, 485 F.3d 343, 350 (6th Cir. 2007) (plaintiff's standing with respect
to one element of an ordinance "does not magically carry over to allow it to litigate
other independent provisions of the ordinance without a separate showing of an
actual injury under those provisions"); Covenant Media of South Carolina, LLC v.
City of North Charleston, 493 F.3d 421, 429-430 (4th Cir. 2007) ("a plaintiff must
establish that he has standing to challenge each provision of an ordinance by
showing that he was injured by application of those provisions"); Coleman v. Ann
Arbor Transportation Authority, 947 F.Supp.2d 777, 790 (E.D. Mich. 2013)
(same).

Citilink rejected Women's Health Link's advertisement based on the policy
provision prohibiting public service advertisements that express or advocate
opinions or positions on "political, religious, or moral issues." While the
advertising policy doesn't define those terms, they aren't so vague that a person
of common intelligence wouldn't understand what they mean or how they apply
in the context of advertising. A general restriction on "political" speech is
permissible in a nonpublic or limited designated public forum, *see* International

Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992); Lehman v. Shaker Heights, 418 U.S. at 304, and while attempts to prohibit speech that is "immoral" and "not in good taste" might be "too vague to be enforced", *see* Air Line Pilots v. Chicago Dept. of Aviation, 45 F.3d at 1153 n.5, that isn't what the the Citilink policy does. It rejects the expression of opinions or positions on "political, religious, *or* moral issues" — terms that are much more transparent, understood by persons of reasonable intelligence, would apply individually and/or collectively to the ongoing debate over abortion, and so aren't unconstitutionally vague. Women's Health Link hasn't presented any persuasive authority to the contrary.

Women's Health Link's overbreadth claim also lacks factual and legal support. "[I]n the First Amendment context . . . a law may be overturned as impermissibly overbroad [if] a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, n.6 (2008); *see also* Bell v. Keating, 697 F.3d 455, 455-456 (7th Cir. 2012) ("Facial invalidation for technical overbreadth . . . is inappropriately employed unless the statute 'substantially' criminalizes or suppresses otherwise protected speech vis-à-vis its 'plainly legitimate sweep.'"). For a constitutional overbreadth challenge, parties not before the court must face a realistic danger that the law will significantly compromise their recognized First Amendment protections. Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984).

In establishing standards for advertising, Citilink sought to maximize revenues and provide public transportation at a reasonable cost, while maintaining concern for the sensibilities of the captive audience on its buses. A governmental entity can legitimately establish comprehensive controls over harmful conduct, as long as the constitution doesn't protect that conduct. New York v. Ferber, 458 U.S. 747, 770 (1982) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)). Some of the terms in Citilink's advertising policy might trigger closer analysis, but Women's Health Link hasn't shown that a "substantial number" of the policy's restrictions offend the constitution. Citilink's advertising policy might be imperfect, but it doesn't give "unbridled discretion" to Citilink officials, is reasonable on its face and as applied in this case, and provides an appeal process, which Women's Health Link chose to forego.

To prevail on its equal protection claim, Women's Health Link must show that it was "intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 950-951 (7th Cir. 2002). It hasn't met that burden. The stated purpose of the advertising policy was to exclude all speech on political, religious, or moral issues, and its practices have been consistent with that policy.

Requiring Citilink to post Women's Health Link's issue-oriented advertisement could significantly undermine Citilink's ability to control access to its advertising space, and "forc[e] [it] into 'an all-or-nothing choice' where 'it might

not open the property at all.'" <u>Children of the Rosary v. City of Phoenix</u>, 154 F3d at 981. Neither the facts nor the law in this case support the relief Women's Health Link has requested.

For all of these reasons, the court GRANTS Citilink's motion for summary judgment [Doc. No. 51], and DENIES Women's Health Link's motion for summary judgment [Doc. No. 54].

SO ORDERED.

ENTERED:   <u>January 5, 2016</u>


<u>   /s/ Robert L. Miller, Jr.        </u>
Judge, United States District Court